1:19 MJ 9237

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OHIO

## AFFIDAVIT

Your Affiant, Shaun Moses, being duly sworn, deposes and states:

1. Affiant is an officer or employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA) within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2. Affiant is a Special Agent (SA) for the United States Department of Justice, Drug Enforcement Administration (DEA), and has been so employed since September 2005.  During Affiant's employment with the DEA, Affiant has been assigned to the Greensboro Resident Office (GRO) in Greensboro, NC and the Cleveland Resident Office (CRO) in Cleveland, Ohio.

## TRAINING AND EXPERIENCE

3. Affiant has been involved in the investigation of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances.

4. Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the manufacturing, trafficking, and use of controlled substances.  Affiant received specialized training at the DEA Training Academy in Quantico, Virginia in regards to the identification of narcotic substances and the operation of drug trafficking organizations. Affiant has written and conducted numerous search warrants which have resulted in the seizure of large amounts of narcotics and narcotics proceeds.  Affiant has also authored numerous Title III affidavits and been the case agent on numerous Title III investigations.

5. Affiant received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. During Affiant's employment with DEA as a Special Agent, Affiant has also worked in an undercover capacity for the purpose of purchasing and/or delivering controlled substances; and has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same. In addition, Affiant has on numerous occasions, as a Special Agent with DEA, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841. Affiant has successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds. Affiant has further conducted surveillance operations of drug traffickers and has interviewed numerous persons personally involved in drug trafficking. Affiant has also supervised numerous confidential sources during controlled purchases of narcotics. Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of the methods, manner and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

6. Affiant makes this affidavit in support of a complaint to arrest the below individual. This affidavit does not contain each and every piece of information known to Affiant and other investigators, but rather only information sufficient to establish probable cause to support the requested arrest warrant.

## **PROBABLE CAUSE**

7. On the evening of July 29, 2019, Ashtabula County Sheriff's Office (ACSO) Deputy Leonard Emch was dispatched to an address on Shadyside Drive, Ashtabula, Ohio in connection with a report of a disabled vehicle and suspicious person. Upon arriving at the scene, Deputy Emch spoke with the homeowner who had reported the disabled vehicle, and the homeowner stated that the driver of the vehicle stated that his vehicle was disabled and he was waiting on someone to come and pick him up. The driver then locked the vehicle and

walked north toward Lake Erie, which can only be accessed via private property. When the driver did not return to the vehicle, the homeowner decided to report the activity to the ACSO.

8. The vehicle in question was a gray, 2001 Volvo station wagon bearing Pennsylvania temporary tag 2987-742. Deputy Emch then drove north to the end of Shadyside Lane in an attempt to locate the driver of the vehicle. Deputy Emch was unable to locate the individual, but noted that the end of Shadyside Drive is a cliff that drops into Lake Erie, and while there was beach access, it was limited to residents of a private association.

9. Upon returning to the scene of the disabled vehicle, Deputy Emch noted that the expiration date on the temporary tag had been altered with a black marker. Upon looking through the windows of the vehicle, Deputy Emch noted several items, including a wallet, a key fob, a knife and black digital scale on the floor. Deputy Emch then returned to speak with the homeowner who reported the incident, as well as a neighbor who had also interacted with the driver. Both indicated that the driver was acting strangely, and both were certain that the driver had walked toward Lake Erie and not returned. Knowing that individuals who are having suicidal thoughts sometimes travel to beaches, parks or lakes and often leave behind personal belongings such as cell phones and wallets, Deputy Emch began to suspect that the driver of the vehicle might, in fact, be having suicidal thoughts, and relayed that information to his supervisor, Sergeant Mark Allen. Sergeant Allen concurred and a decision was made to enter into the vehicle in an attempt to further investigate the situation and identify the unknown driver of the vehicle.

10. Upon making entry into the vehicle, Deputy Emch located a Colorado driver's license in the name of MICHAEL PRITCHARD, as well as other cards with PRITCHARD's name on them. Deputy Emch also noted a firearm in the back seat of the vehicle, but upon closer inspection, confirmed that the weapon was a BB gun. In the same bag in which the BB gun was located was a gallon-size bag containing a crystalline substance which appeared consistent with crystal methamphetamine.

11. While Deputy Emch was completing paperwork relative to the incident, he learned that PRITCHARD had called the ACSO and stated that there was a tow company en route to pick up his vehicle. Deputy Emch requested that ACSO dispatch call PRITCHARD back and ask him to

return to the vehicle and speak with Deputy Emch. After the tow company PRITCHARD had called arrived at the scene, the tow truck driver attempted, unsuccessfully, to call PRITCHARD. A short time later, PRITCHARD called the tow truck driver back and said he was on his way back to the vehicle. At approximately the same time, Deputy Emch performed a field test on the suspected crystal methamphetamine, which returned positive results for the presence of methamphetamine. The suspected crystal methamphetamine was also later weighed and found to be approximately 191 grams.

12. A short time later, PRITCHARD came walking down the road and was contacted by Deputy Emch and Deputy Wolff. Deputy Emch advised PRITCHARD of his Miranda warnings, and explained his thought process prior to entering PRITCHARD's vehicle. PRITCHARD agreed with Deputy Emch's line of thinking. Deputy Emch then advised PRITCHARD that he had located a digital scale and a large bag of suspected methamphetamine in the vehicle. Deputy Emch then patted PRITCHARD down, and noted something in PRITCHARD's left pocket. PRITCHARD said he didn't know what was in his pocket, and at that point, Deputy Emch placed PRITCHARD under arrest and handcuffed him.

13. Deputy Emch continued to ask PRITCHARD about the contents of the vehicle, however PRITCHARD disavowed any knowledge or ownership of the suspected methamphetamine, scale or any of the numerous Social Security cards located inside the vehicle. Deputy Emch then decided that the car should be sealed pending a follow up search warrant, to be obtained the next day.

14. PRITCHARD was then transported to the Ashtabula County Jail, and during the ride there, spoke briefly with Deputy Maria Sharp. Upon entering the car, PRITCHARD began explaining that the approximately $1,400 in his pocket was from an insurance claim, and Deputy Sharp confirmed that PRITCHARD had been advised of his Miranda warnings. PRITCHARD acknowledged that he had, and stated that he understood them. During the ensuing conversation, PRITCHARD mentioned that he had been to jail before, and when asked what for, PRITCHARD stated, "the same kind of drugs that I had," which Deputy Sharp took to mean the suspected crystal methamphetamine that Deputy Emch had found in PRITCHARD's vehicle.

15. A subsequent search warrant executed on PRITCHARD's phone revealed numerous text messages concerning drug trafficking.

## CONCLUSION

  Based upon the above listed facts and circumstances, there exists probable cause to believe that MICHAEL PRITCHARD did knowingly possess with intent to distribute a controlled substance, in the Northern District of Ohio, Eastern Division, in Violation of Title 21 USC § 841(a)(1) and (b)(1)(C).  Affiant therefore requests that an arrest warrant be issued for MICHAEL PRITCHARD.

_____
Shaun C. Moses
Special Agent
Drug Enforcement Administration


Sworn to via telephone after submission by reliable electronic means this __5th__ day of September, 2019. Fed. R. Crim. P. 3, 4(d), and 4.1.


_____
WILLIAM H. BAUGHMAN, JR.
UNITED STATES MAGISTRATE JUDGE